Before us is the case in the matter of James W, and we have Barbara Gobin, who's part of the appellant, and Sharon Channingham, who's the athlete, and they've received the appellant. Thank you, Your Honor. May it please the court, counsel, my name is Barbara Gobin, and I represent James W, who's appealing an order for his continued involuntary civil commitment. There's two issues that I respectfully bring to the court's attention today. First, whether the trial court violated the mental health code by saying the jury trial 97 days after Mr. W's request for the jury trial. And second, whether the petition is defective or it fails to include the names and addresses of James' family or friends. First, the beginning issue of jurisdiction, the state concedes that this appeal satisfies two of the exceptions to the mootness doctrine, the public interest exception and the capable repetition yet evading review. The first issue I would like to bring to your attention is, in this case, there was no compliance with the mental health code because the trial court said the jury trial 97 days after his request for one. The standard of review, because this is an issue of statutory compliance, is de novo. First of all, there's no precedent that exists which supports the setting of a jury trial 97 days after their request. As you well know, in mental health law, civil commitment is a deprecation of a person's liberty interest, and therefore the trial courts have to strictly comply with the mental health code. By statute, the mental health code says that the hearing for commitment should be set within five business days and also under section 53800B that no continuances greater than 15 days should be granted. Basically, this right, the timeframes were set for two reasons. First of all, in the legislative history, it was to avoid the necessity of preliminary hearings because you're denying a person's liberty through civil commitment. Also, because this deprecation of liberty, they have a 14th Amendment and process right, which in some cases have incorporated the right to a speedy trial. So there's case law precedent because the mental health code uses the mandatory shall in these timeframes. As you well know, in mental health cases, shall is mandatory, and also that courts construe or interpret the mental health code in favor of the response because of the liberty interest involved. There's two cases that support adherence to the timeframes of the mental health code. The one that's most appropriate is Williams. In that case, he requested a jury trial, and basically it reversed because they held the hearing five and a half months later after his request for the jury trial. Here in this case, the petitioner- That's like 190 days. I think it was 100 and- 200? Yeah, it was like five and one half months on that case. This is 97 days. 190, 200 days. Yeah. And in this case- This was 97. 97 days, yeah. And I'm not even counting- The petition was filed in April. The first setting was May 5th, and he requested an independent evaluation. So then it was continued to May 19th. I'm not even counting those days, the initial days, or the independent evaluation. At the hearing, he requested a jury trial, and the judge said, well, our first date is August 23rd. So it was the court who set the date up. It wasn't him. He asked for a jury trial. And so- Ms. Goldman, would it matter that it was five months versus three months, if the mandatory statute language requires 15 days? I think I am taking common sense. If it was within, like, a month, it would seem more- There's an effort to comply with the statute. But when you set it for three and a half months later, without anything on the record saying, oh, we can't get a special jury trial, in Williams, he said, we understand there's needs and judicial limitations, but we should ask for a special jury trial. And here the court didn't make any efforts or documentation. We're trying for a special jury trial. We can't. The court, I guess, referenced something like that's the next jury docket. And, you know, it's giving- And basically, I guess this is a thorny issue. He said, okay. But it's giving him a choice between whether to have a jury trial, which- He has the right to a jury trial, but then he's told he can't have one. He chooses that choice. Right, until it's over half of the period. You know, like the civil commitment is 180 days. You know, the 96 is half that period. They don't give him credit for that that period of time, actually. So it's from that date on. So 30 days is okay. Well, I mean, I'm just being reasonable. You know, like if there's some documentation- 35, are they okay? No, it's kind of unusual. But is it arbitrary that you're going to say that 40 days is okay but 97 isn't? Well, I mean, I'm just being kind of reasonable, and I understand there's judicial limitations. On the code, it's strictly 15 days, and they have to hold the hearing within the 15 days. Jury trial. And there's no exception for jury trial. It just says the hearing is in 15 days, and- I'm surprised there isn't more precedent than- Yeah, there's Williams where it was a jury trial. They said, you know, the statute seems kind of odd on this way, but, you know, the trial court could ask for-conduct a special jury trial if there isn't a documentation. I'm just being kind of reasonable saying 30, you know. I mean, there's not as much prejudice as being 97 days. So could somebody walk me through the procedural aspect of this? They take the patients then to the Perry County Courthouse for a jury trial? Randolph County Courthouse. Randolph. Yeah, and they have a docket every week. And they have a docket every week, but they only have jury dockets every three months? That's right. And this is off the record, you know. I've encountered this in other cases, people saying they gave them the choice of the three months versus- Or non-jury. Versus non-jury. And if you determined the jury trial was more complete of a record this time, you know, it was more of a hearing. So, you know, it's not like- The state has raised they have limited judicial resources. But, you know, they have every week a mental health docket. It's not like an unknown thing to have a civil commitment docket in their jurisdiction. And the state brings up the issue of the waiver. And waiver is really, as you well know, a limitation on parties and not on the reviewing courts. And waiver is allowed when there's substantial compliance or the statute's purpose is served. Here, by saying that hearing 97 days in advance, really the compliance with the statute's scheme of a quick trial is not complied with. And further, it's purpose of having people not indefinitely hospitalized is not complied with, with the 97 days. And that's why I said, well, maybe 30 days is more of a substantial compliance. You know, we've tried. There's efforts made. But it seems like the 97 days just seems so long. Five and a half are long. Right. Right. Right. Where, you know, when it's over half the period of the commitment time, and there's no documented efforts to comply with the quickness element of the mental health court. And, you know, the state analyzes to, I'm not an expert on the criminal loss, like, speedy trial, that, you know, the defendant has to raise this in compliance with this. But this is, there's two differences. This is really a civil commitment of someone who's mentally ill, and the court has a duty to comply with the statute. And so, you know, acceptance of this would kind of erode the strict compliance of mental health cases needed to protect the respondent's liberty interest in this. And I understand Randolph County is a small county, but they have a mental health docket every week. They have what now? They have a mental health docket every week. Oh. So it's not unusual or anything to have civil commitments there. And then the issue of, well, was he really prejudiced by this? And in mental health cases, basically harm is not required to be proven because of the obvious liberty interest. But in this case, they said short delays. The first district said a short delay in Hanna E. was not prejudicial versus a lengthy delay. And a short delay was 22 days. And here, it was a lengthy day where it's over half the period of commitment. Furthermore, the respondent also made a proper jury request. Under the Mental Health Code, there are rights to request a jury, and it's guaranteed the right to a jury trial so long as one's requested. And there's precedent that it should be liberally construed. He actually verbally said it from the judge, and afterwards he wrote an actually kind of interesting letter. He said, I want a fair jury trial. And the second issue is whether the petition complies with the Mental Health Code because it fails to accurately include the name and addresses of my client's family or friends.  It's section 3601B, and the code only requires four things in the petition. And one of the four things is the names and addresses of friends and family. In this case, they put in the section, Psychologist 3. In the treatment plan, there's names and phone numbers of relatives. But that was attached to the petition, correct? The treatment plan, and that's the state's position. So it appears that there was actual knowledge of the relatives and friends. But there was no addresses provided. And really, the treatment plan could be, it wasn't incorporated as an exhibit, and the court considered it a separate document, the treatment plan, because the exhibit wasn't incorporated. I mean, it wasn't incorporated as an exhibit as part of the petition. Are you contending, then, that there was a duty to contact the friends and family? Well, there's a notice provision that certain relatives are notified of the hearing, receive notice of the hearing. And the court, it's easier for the administration of the court, when they get the names and address, to give them notice of the hearing. So, and it's under, now, it's interesting, the Mental Health Code has notice of the hearing is to, I think, spouse, guardian, or parent. And his relatives aren't part of that. So, but, you know, the code is simple enough. It's only four things needed in the petition. One of them is the names and addresses. And to say Psychologist 3 is not really complying with the code. And there's clear precedent that there should be strict compliance. It's a plain error, even if there's no objection issued. My job would be easier if there were subjections, especially the timeliness issue, you know. But the errors here are obvious on the face of the documents. Any questions? I don't think so. You'll have the opportunity to reply. Ms. Shanahan. May I please report? Counsel. My name is Sharon Shanahan, and I represent the people of the state of Illinois. In the first, with the first issue on appeal, the question of whether the mental health patient is entitled to, I'm going to call this the trial. I'm sure we could give it all sorts of different names. But that's essentially what we're asking here, whether he has a due process right to be tried within a specific time frame. This is not a statutory question, but a more of a constitutional due process question. First of all, I believe this issue is forfeited. It was not raised in trial. Counsel for the respondent sort of indicates that forfeiture shouldn't apply to mental health cases. I would note that in both NRA NOW and NRA's Illinois Supreme Court cases where forfeiture was applied. And I think it's important to consider when it is applied. It is applied when the respondent fails to bring the problem to the attention of the court by objecting to it, acquiesces to the delay, and the problem could be easily fixed. So the only thing that had to happen in this case is for somebody to say, no, that's too long. We want it sooner. We have a right to it sooner. Then we wouldn't be in a forfeiture question. We would have allowed the trial court to deal with the question of whether he had this right to make determinations on it, to give him the trial. Williams, that is relied upon by the respondent, says, well, you can have a special jury. Yes, just ask for it. But don't just sit by and do nothing. And then when you lose, say, well, that was an error. So I think forfeiture is very applicable in cases such as these where it could have been very easily requested. Let's just assume that we're going to consider plain error. Okay. You know, I am concerned that the statute is very clear that you get 15 days. What beyond that? Well, I think here today, counsel has agreed that it's going to be virtually impossible to have jury trials in 20 days. I mean, 15 days. But what are we supposed to do with the plain language of the statute? I understand the impracticality of it, but aren't we faced with a statute that's pretty darn clear? Well, under your, the way you phrased it, we're dealing with plain error. So we have to consider, did this hurt anything? I think that we have to consider the overall viewpoint of how we look at speedy trial demands. And one of the most important things to look at in a speedy trial demand is that sometimes it helps the defendant. And in this case, I think it helped the respondent. So I think it should be permissible. Helped the respondent in what way? That he improved during the trial? Yes, he certainly did. He had attacked two, I don't know whether it was people that worked there or other patients that were committed there. I don't remember. But he had attacked two people shortly, just right before this was filed. But in the timeframe between the time the petition was filed and the time he had his jury trial, he'd been really good. He hadn't done anything. And this was something that his counsel relied upon strongly in his argument is that he's getting better. Can you seriously argue that when you're talking about taking away somebody's liberty interest that it did them good to be incarcerated essentially during that time? Well, he had options to pursue during this timeframe a habeas corpus petition. And as I say, he certainly could have requested a special jury. So there are options there, and I think we have to consider the fact that his attorney should be given the option to consider what's best for his clients. It's a little hard to say that you're not dangerous to others when two weeks earlier you attacked somebody. So I think we do have to give some leeway to that. And you say he could have requested a special jury, but his attorney chose not to. Is that what you're saying? He agreed to this. Well, he agreed. It is kind of a Hobson's choice, though. He has a right to a jury trial, and when he exercised that right, you're saying he agreed to a wait of 90-something days because the court said that's all you get. He said, I want a jury trial. The judge said, that's fine. He has a right to that. It'll be 97 days, and you understand that during this timeframe, and this obviously to the respondent and to his counsel, you understand that during this timeframe, you will remain committed. Yes, we understand that. So you're essentially saying that waives the violation of the statute? Well, I'm saying that if we look at the law that applies to speedy trial analysis, and in the reply brief, respondent says, oh, well, this isn't a criminal case. You can't do that. But I think that in the opening brief, respondent has said the same thing. We don't have anything to compare this to other than criminal speedy trial cases. So I think we can look at criminal cases and speedy trial law in there. He was informed of the delay. He did not voice any objections, despite the fact that the trial court informed him that he would remain at Chester until then. It's pretty obvious that a judge can't start a jury trial on a day's notice. The trial judge possesses the knowledge of the conditions and circumstances of his circuit and is in the best position to evaluate the time necessary to complete the administrative steps involved in calling a jury trial. And I would note that in People v. Cordell, an Illinois Supreme Court case, the court said forbidding trial courts from even proposing trial dates that fall outside the statutory period would remove a portion of the discretion they require for setting a court schedule. Now, again, that's a criminal case. But I'm like you. I'm surprised this hasn't come up before. But it hasn't. So we have to look at similar things. So that's what the court did. He proposed a date. And so what option, then, do you say that Mr. W. He could have asked for a special jury. And he would have been provided one. There is nothing, certainly nothing to in, I mean, the record stops there. We don't know. There's no reason to think that he wouldn't have. But, yes, he could have done that. There are liberty interests here. There are liberty interests in criminal cases, too. So to say that, well, this involves liberty interests. But it appears that this court is not set up in any way, shape, or form to conform with the statute if they have jury trials every three months. It's a very small county. And obviously this doesn't happen, or the question wouldn't have arisen before. And as Ms. Goldman agrees, well, no, you couldn't do it in 15 days. And she says, well, 30 days wouldn't be enough. Justice Fulmer says, well, it's 45 days. Well, maybe. In Williams, which defendant, excuse me, I'm having plaintiffs and respondents and defendants this week. I'm getting them all confused. That was, number one, a much longer period of time. Number two. Some of that time, though, I think was attributable to a continuance, I thought, that the patient request. Well, Mr. Williams made definite efforts to get a faster jury trial. He made two motions to dismiss for want of a timely hearing. And his hearing was delayed not once, as was the case here, but five times. So there was a lot of things. The things that happened in Mr. Williams' hearing were much more egregious. What we had here was I want a jury trial. Okay, our next scheduled one would be in 97 days. Okay, you know you're going to stay committed during that time. Yes, I do. Then we'll have a jury trial there. That's so different from the facts in Williams in which he said, no, that's not good enough. I want it so you have to let me go now because you didn't give me a fast enough jury trial. I guess maybe to me maybe this is not the case to decide, does it have to be done in 20 days? Is 30 days enough? Is 45 days enough? Is three months too long? I think the case that should decide that is the one where the defendant says, I want a jury trial. And the trial court says we'll have one in 97 days. And his counsel says, no, we have a right to have it in 15 more days. We want it then. And the judge says, can't do it. That's when you look at the issue of how much is a line in the sand drawn here and how reasonable is it to expect a small county to pull up a jury trial in 20 days. This case shows so much acquiescence to what happened here that I don't think it is the proper case to deal with that specific issue. I think we have a situation here where everyone agreed to this. No one has shown any prejudice in it. As I say, it may have worked to his advantage in this case. He had attacked two people just days prior to this. His counsel knew that. He was good for the next few months. He had a much stronger argument to make at that jury trial than he would have in May. Would it make any difference if it was a longer time? And you're saying he acquiesced. Would it make any difference if it was right upon the six months and he's about to be released and he still hasn't had a hearing? Would that make a difference? I think your question goes to that end. Justice Bomer's question goes to this end. And I have to kind of go along with Ms. Gobin and say, well, that's unreasonable. Six months sounds worse than 40 days. But still, I think, I mean, again, going back to speedy trial analysis, no, I don't think it would matter. And, again, to the prejudice. Don't most of the county has once a month, what normally is for all the juries? I have no idea. I've never done trial prejudice. I just don't know. Once every day. And where was he housed? Was he in Chester? Yes. I mean, that's biggie, isn't it, for this area? It's a big hospital, but it's a small county. Right. The jury comes from not the hospital. Well, I understand that. I'm just thinking that they would have a lot of situations that would warrant these hearings. But apparently not situations that warrant jury hearings. I was like you. I'm surprised it hasn't happened before. If there are no questions, I'm going to move on to the second issue. Again, I'm going to ring the forfeiture bell. Not raised before. And, boy, could this have been easily cured. Under now and split, all he had to do was say you didn't list friends and family. And, Justice Chapman, as you noticed, they had actual notice of it. They were attached to the petition was the treatment plan and that in the reply brief, the respondent takes some issue of whether it was filed as part of or filed separately from. But in the opening brief, the respondent concedes that the treatment plan was filed with the petition. So they're both there and filed on the same day. And whether you look at it as being part of the petition, whether you look at it as giving actual notice, the code does require that the petition be read in its entirety. And it's sufficient if it's the information provided somewhere. And so I think that respondent and his counsel had notice of his sister and her phone number. Not the address, but I don't see that as being fatally defective when it's so easy to pick up the phone and call her. I want to point out that respondent's reliance in this particular issue is strongly on this court's decision in Joseph M. Joseph M. has language in it that says that adult siblings must be contacted. There's nothing in this statute, in this section that we're talking about here, of the petition has to contain the names of friends and family. It says that, I mean, it's a list. You don't have to contact them. You don't have to serve them with a copy of this petition. It's just who are these people? So I think that the language in Joseph M. that said that adult siblings who were not guardians, who were not, that they had to be contacted. I think that's very, very suspect language. And I think that what the statute requires is a list of people. Not that you serve them, not that you contact them. And certainly, given the actual knowledge that respondent and his attorney had, another section of the statute requires that people can be served if the respondent or his attorney wanted them. Different section of the statute. That's not the one we're talking about right here. So the state's not saying that these people shouldn't be included, that they shouldn't, the friends and family I'm talking about, that they shouldn't be listed. We are saying that it's not errant not to contact them. The other thing that's important in this case, and again, I'm going to go back to prejudice, is that the person that we're talking about here is the respondent's sister. And he testified that, and I'm sure Ms. Goldman can correct me if I'm misstating this, but basically he said that he might be able to go live with his sister if he was released. Well, there were two reasons that his commitment was that they wished to extend it. And one of them was that he couldn't take care of himself on his own. But the other one was that he was a danger to himself and others. He had been in Chester since 2003, and he has spent almost every year since 1986 either incarcerated or involuntarily committed. I have no doubt that his sister loves him, and she did maintain contact with him. But unlike the case cited in Respondent's Brief on NICS, she's not likely to have information that's going to be helpful about whether he should remain committed or what kind of medication he could get or something like that. She has had limited contact with this man for over 20 years. He has been committed or imprisoned at any time, so she's not going to know. In NRACS, the respondent's mother supplied details of a negative reaction to proposed medication, which the doctors wanted to administer. That's not the case here. There is also just no question that a respondent could be expected to inflict serious physical harm on himself. The testimony was that from not only his treating physician and psychologist, but the independent expert, that he was a danger, that he was really aggressive, uncontrollable. And finally, I'd like to, I'm running short, but Respondent claims he doesn't have to prove harm. Harm is prejudice. And in his opening brief, Respondent concedes that in both Joseph M. and in Lance H., both those cases imply that reversal is not required if there is no prejudice. In other words, they say if it's presented somewhere else in the petition, if there's actual notice, so on and so forth. So I don't think that the allegation that you don't have to prove harm is correct. Thank you, Ms. Shanahan. Ms. Vogel, do you have an opening rebuttal? I have several points. The issue, on the first issue regarding the time period of the jury trial, there is a line of cases, and it's not, you know, the issue of timeliness of the trial is statutory, which stems from the right of speedy trial. And courts have found that there's no prejudice when there's, like, substantial compliance, so when it hits the 22 or the 30 days. So that's why they, I put those timeframe, because it was substantial compliance, we're trying to comply with the statute. Here, there's no documented efforts that they try to comply with the timeframes of the statute. And also, the state would like to shift the burden of compliance to the respondent in this. But in the health code, it's all parties are supposed to comply with the statute. And there's case law that says that bright lines, the statute created, to avoid deciding these cases on an ad hoc basis is to prevent abuse of the procedures involved. And acceptance of this 97 days would really, or the state's argument, would place the burden of compliance with the code solely on the respondent. And, you know, the respondent is not, even though a respondent is presumed competent, do they have the burden of saying, hey, this is not in compliance with the code. It's also the court's duty, too, to comply with the code. And here, there is an issue of prejudice because they did the 180 days from the date that the order was entered, so he was not given any credit for that period of time where he was involuntarily committed, waiting for this jury trial. So it's unlike a criminal case where they get credit for time served. Here, they don't even get credit for time served. It's 180 days from the date that the order was entered. And then with regard to, I call it the friends and family issue, you know, the purpose of the policy of the statute is to involve friends and relatives and guardians. There's numerous references in the code of family and guardian involvement. I think we can assume that it's a policy of the Mental Health Code to involve as many people in the care and treatment of the person to prevent indefinite incarceration through civil commitment. And I think that's what Joseph M. meant by that statement. And it's clear in the precedent that when there's an error on it, this court just then rejected the waiver argument because reversal is generally warranted even absent of objection. And in this case, you know, it was not, you know, they only needed to do four things. And one of the four things was the name and addresses. And even if we consider the other section of the treatment plan as part of the petition, we still didn't get the addresses of the friends and relatives. Any questions? Thank you for your time. Thank you. Thank you both for your brief arguments. We'll stand and recess until 1.30.